UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FLAGSHIP LIVING TRUST,
for the benefit of PATRICK S.
KITTLER, an individual,

CIVIL NO. 01-656 (MJD/JSM)

Plaintiffs,

v.

ORDER

LMA UNDERWRITING
AGENCY, INC., a Minnesota
corporation; FRONTLINE
PROCESSING CORPORATION,
a Nevada corporation;
CHRISTOPHER KITTLER, a
resident of the state of Montana;
and RONALD REAVIS, a
resident of the state of Montana

Defendants.

The above matter came before the undersigned United States Magistrate Judge on April 2, 2003 upon defendants LMA Underwriting Agency, Inc., Frontline Processing Corporation, and Christopher Kittler's (collectively "LMA") Motion to Obtain Ex Parte Submissions and Attend Hearing of Withdrawal of Counsel [Docket No. 63]. Peter Gray, Esq. appeared personally and Robert Stewart, Esq. appeared by telephone on behalf of plaintiff Patrick Kittler, who also appeared by telephone. Eric Braaten, Esq. appeared personally on behalf of LMA.

After the Court's initial Order on this motion dated April 2, 2003, the following issues remained before the Court: (1) LMA's access to the materials filed ex parte in connection with plaintiff Flagship Living Trust's ("Flagship") counsels' motions to withdraw; (2) LMA's arguments to the Court for sua sponte dismissal of the case; (3) LMA's access to the



FILED JUN 09 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

transcript of the hearing on the motions to withdraw; and (4) Mr. Braaten's review of privileged email messages from Mr. Kittler to Flagship's counsel. These remaining issues are addressed by this Order.

## FACTUAL BACKGROUND

LMA Underwriting Agency, Inc. ("LMA") was incorporated in Minnesota in 1990 under the name London Marketing Associates by plaintiff Patrick Kittler ("P. Kittler") and his brother, defendant Christopher Kittler ("C. Kittler").[1] P. Kittler and C. Kittler formed LMA intending to market products and services within the credit card industry and to begin work as a credit card processor ("ISO").[2] To create the funding needed to establish LMA as an ISO, LMA began marketing a proprietary insurance industry product to banks for financial responsibility for chargebacks.[3] P. Kittler and C. Kittler planned to use the earnings from the insurance product to build LMA into an ISO.[4]

P. Kittler alleges that until June 1995, he and C. Kittler each held 50% of the interest in LMA, but that they reached an agreement in June 1995 to re-distribute their interests due to P. Kittler's declining health and C. Kittler's commitment to continue operating the company.[5] P. Kittler contends that on June 27, 1995, P. Kittler and C. Kittler entered into a written agreement whereby P. Kittler transferred 20% of his interest in LMA to C. Kittler in return for a number of promises by C. Kttler to P. Kittler, including the payment of 30%

---

[1] Verified and Amended Complaint and Jury Demand ("Complaint") [Docket No. 6], ¶ 8.

[2] Complaint, ¶ 9.

[3] Complaint, ¶ 9.

[4] Complaint, ¶ 11.

[5] Complaint, ¶ 12.

of LMA's profits to P. Kittler.[6]

P. Kittler alleges that C. Kittler has not complied with the terms of the June 1995 contract.[7] Therefore, on July 13, 2001, P. Kittler initiated the instant lawsuit asserting the following causes of action: (1) usurpation of corporate opportunities; (2) usurpation of corporate opportunities (on behalf of LMA); (3) breach of contract; (4) breach of fiduciary duty; (5) dissolution/buyout; (6) breach of duty of loyalty; (7) breach of duty of loyalty (on behalf of LMA); (8) tortious interference; (9) tortious interference (on behalf of LMA); (10) misappropriation of confidential information and trade secrets (on behalf of LMA); (11) conflicts of interest (on behalf of LMA); (12) injunctive relief and appointment of a receiver (on behalf of LMA); (13) conversion; (14) conversion (on behalf of LMA); (15) promissory estoppel; and (16) dissenter's rights.[8]

From the beginning of the lawsuit, LMA has maintained that the 1995 contract was not authentic and that C. Kittler's signature was a forgery.

On January 21, 2003, Rider, Bennett, Egan & Arundel ("Rider Bennett"), counsel for Flagship, filed a motion to withdraw as Flagship's counsel. The supporting papers to this motion were submitted to the Court ex parte and were served on Flagship. On January 24, 2003, McNaul, Ebel, Nawrot, Helgren & Vance ("McNaul Ebel"), counsel for Flagship, filed a motion to withdraw as attorneys for Flagship. The supporting submission was served upon Flagship and submitted to the Court ex parte. These supporting papers were not served on LMA's counsel or Reavis and were not filed with the Clerk of Court.

---

6 Complaint, ¶ 12.

7 Complaint, ¶ 15.

8 Complaint, p. 7-16.

On March 17, 2003, counsel for LMA submitted its Motion to Obtain Ex Parte Submissions and Attend Hearing of Withdrawal of Counsel. In this motion, LMA asserted that LMA was entitled to the ex parte submissions related to Flagship's attorneys' motions to withdraw. LMA contended it was entitled to such submissions because it believed that they involve allegations of fraud on the court. LMA further asserted that LMA is entitled to the ex parte materials to the extent they are not privileged or constitute evidence from non-parties. Flagship's attorneys, on the other hand, argued that the ex parte submissions are subject to the attorney-client privilege, protected by the work-product doctrine, and reveal attorney-client confidences and other attorney-client privileged communications and, as such, cannot be revealed to LMA.

On April 2, 2003, the Court held a hearing on LMA's motion to obtain ex parte materials. During the hearing, LMA's counsel, Eric Braaten, revealed that he had received email messages from P. Kittler intended for P. Kittler's counsel but accidentally sent to him. Braaten proceeded to refer to the contents of the emails in support of his client's motion. However, upon learning of the inadvertent sending of these emails, the Court ordered Braaten not to refer to them in his argument, to deliver a copy of the email messages to the Court, and to destroy all copies and access to the email messages on his computer system. On April 4, 2003, Braaten complied with this order and the Court received copies of the email messages accidentally sent to him by P. Kittler. A review of these emails by the Court, indicated that they were sent March 27, 2003, at 12:30 p.m., 1:03 p.m., and 1:08 p.m. The first two email messages were addressed to P. Kittler's counsel. The third email message (sent five minutes after the second message) was addressed to Braaten and informed Braaten that the previous email messages contained privileged information

intended for P. Kittler's attorneys and not Braaten. P. Kittler further requested in this third email that Braaten not read the previous emails and that he destroy them. Braaten did not comply with P. Kittler's request to destroy the messages; rather he read and retained such messages until ordered by this Court to deliver them to the Court and remove them from his computer.

## DISCUSSION

### I. Ex Parte Submissions Related to Motions to Withdraw

LMA is not entitled to the ex parte submissions relating to the motions to withdraw to the extent they contain privileged information. LMA's attorney himself conceded that LMA is not entitled to materials to the extent they are privileged.[9] The attorney-client privilege requires four elements: "(1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purposes of seeking, obtaining, or providing legal assistance to the client." Restatement, The Law Governing Lawyers § 118; see also Bituminous Casualty Corp. v. Tonka Corp.,140 F.R.D. 381, 386 (D. Minn. 1992) (concluding that, under Minnesota statute § 595.02, "Minnesota courts consider whether the information sought is a confidential communication between an attorney and client

---

[9] LMA stated in its motion for access to the ex parte materials that "Defendants should have access to Plaintiffs' Counsel's Affidavits to the extent that it would not violate the attorney client privilege." Defendants' Memorandum in Support of Their Motion to Obtain Ex Parte Submissions and to Attend Hearing on Withdrawal of Counsel ("Memorandum to Obtain Ex Parte Materials"), [Docket No. 64], p. 6. In addition, LMA stated, following its argument that it is entitled to the materials relating to withdrawal, that "Defendants are assuming that the affidavits do not reveal privileged information to the Court." Memorandum to Obtain Ex Parte Materials, [Docket No. 64], p. 6. Further, LMA stated, in support of its position that it is entitled to P. Kittler's submissions, that "the documents surely are not protected by any privilege." Memorandum to Obtain Ex Parte Materials, [Docket No. 64], p. 7. Finally, LMA stated that "[a]s for the affidavit from J. Patrick Kittler, who is Christopher and Patrick's father, defendants clearly are entitled to this affidavit because, as a non-party, there is no attorney-client privilege for the information in his affidavit." Memorandum to Obtain Ex Parte Materials, [Docket No. 64], p. 7.

made for the purpose of securing legal advice") (citations omitted). Submitting documents to the court for in camera review does not waive applicable privileges. United States v. Zolin, 491 U.S. 554, 568-9 (1989) (concluding that "disclosure of allegedly privileged materials to the district court for the purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege"). Therefore, to the extent the ex parte submissions are privileged, LMA is not entitled to them and LMA's motion is denied.

### A. Motions to Withdraw and Accompanying Affidavits

In support of their respective positions, counsel revealed extensive communications between themselves and P. Kittler in their affidavits and memoranda of law that were confidential and for the purpose of seeking, obtaining, or providing legal assistance. As such, LMA is not entitled to Flagship's attorneys' motions to withdraw or the accompanying affidavits and memoranda of law because they are permeated throughout with privileged information.

### B. P. Kittler's Submissions in Opposition to Motions to Withdraw

LMA is not entitled to P. Kittler's submissions opposing his counsel's motions to withdraw, with the exception of four non-privileged attachments described below. Like the motions to withdraw submitted by Flagships' attorneys, P. Kittler's written opposition papers and attachments[10] are permeated with privileged communications between himself and counsel that were confidential and for the purpose of seeking, obtaining, or providing legal assistance. Consequently, LMA is not entitled to P. Kittler's opposition. There are, however, four attachments contained within P. Kittler's submission that are not privileged

---

[10] P. Kittler submitted attachments with his opposition which consist largely of email communications between P. Kittler and his attorneys.

and will be provided to LMA by Flagship's counsel. These are: pleadings filed in the Utica case; two of P. Kittler's auto leases; and a merchant agreement/charge back policy. Counsel for P. Kittler shall provide copies of these documents to LMA or, if they have been previously produced, shall provide LMA with the bates numbers of the documents.

**C. Affidavit of J. Patrick Kittler**

On the whole, J. Patrick Kittler's Affidavit does not reveal privileged information or communications. However, the third sentence to the end of the last paragraph of the affidavit submitted to the Court does contain privileged information. Therefore, P. Kittler's counsel will provide LMA with a redacted version of J. Patrick Kittler's affidavit. In this regard, J. Patrick Kittler's Affidavit shall be redacted beginning with the third sentence of the last paragraph on the last page to the end of that paragraph.[11]

**II. Sua Sponte Dismissal of the Case**

The Court rejects LMA's argument that this Court should dismiss Flagship's case sua sponte. "When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court." Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)). Although this Court has the inherent power to dismiss a case for abuse of the judicial process, use of such power is not appropriate here. LMA has not offered any evidence proving that Flagship has abused the judicial process or committed fraud upon the court. Rather, LMA has only offered speculation as

---

[11] In light of the fact that the Affidavit of J. Patrick Kittler was prepared by P. Kittler to defend against his attorneys' motion to withdraw, in the event that a deposition of J. Patrick Kittler is taken, he may not be questioned regarding what he was told by P. Kittler or what was given by P. Kittler to prepare his Affidavit, or why certain facts or information were included or not included in the Affidavit.

to the contents of Flagship's counsel's ex parte submissions and an expert report indicating that it is likely that C. Kittler's signature on the 1995 contract is not genuine. Such assertions are not sufficient to support such a severe sanction. Moreover, the cases LMA cited in support of its motion to dismiss, Garland and Nichols, are of no assistance here because they only address a court's authority to grant a party's motion to dismiss and not whether dismissal is appropriate under the circumstances presented by this case. Garland v. Peebles, 1 F.3d 683, 687 (8th Cir. 1993); Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1049 (8th Cir. 1991).[12] Accordingly, LMA's argument that this Court should dismiss this case on its own motion is not persuasive and, its motion to dismiss is denied.

## III. LMA's Access to Transcript of Motions to Withdraw Hearing

Since the submissions related to the motions to withdraw and the hearing thereon were permeated with attorney-client privileged communications and information and at the hearing the parties argued extensively and relied upon the submissions, LMA will be denied access to any transcription of the hearing.

## IV. Inadvertently Sent Email

The Court finds Braaten's behavior relating to P. Kittler's accidently sent email messages inconsistent with his ethical obligations and his duties to this Court. "A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not

---

[12] In Nichols, the Eighth Circuit affirmed the district court's granting the defendant's motion to dismiss based on the plaintiff's fraud on the court. Nichols, 949 F.2d at 1048. In Garland, the Eighth Circuit affirmed the district court's granting of the defendant's motion to dismiss for failure to prosecute where the plaintiff created an ethical dilemma for her lawyers resulting in the withdrawal of several of her attorneys such that the case could not move forward. Garland, 1 F.3d at 685-6. Here, the Court has not found fraud on the Court nor an ethical dilemma created by P. Kittler for his attorneys.

intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-368, "Inadvertent Disclosure of Confidential Materials" (1992).[13]

While the Court recognizes and appreciates the fact that Braaten brought the issue to the Court's attention at the hearing, nevertheless, Braaten ignored the ethical conduct contemplated by the precepts of the Rules of Professional Conduct governing Minnesota lawyers. Id. First, he read the first two email messages when it is clear from the first words of each message that they were intended for P. Kittler's counsel and not Braaten. Further, since the first email acknowledged receipt of a communication from P. Kittler's counsel to P. Kittler and promised feedback by P. Kittler, and the second message's first line stated that P. Kittler was "[s]till reviewing your submission," the topics of the messages, from the beginning, revealed that they were not intended for Braaten. Second, Braaten ignored the request from P. Kittler, sent immediately after the second email, that Braaten destroy the previously sent email messages. Finally, Braaten's attempt to use the contents of these accidentally sent email messages in his oral argument to the Court, particularly in the face of P. Kittler's instructions that they be destroyed, was completely improper. This Court

---

13 In this Opinion, the ABA Committee on Ethics and Professional Responsibility was being asked to opine on the obligations under the Model Rules of Professional Conduct of a lawyer who comes into possession of materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the materials were not intended for the receiving lawyer. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-368, "Inadvertent Disclosure of Confidential Materials" (1992). In reaching its opinion, the Committee relied upon Model Rule 1.6 of the Model Rules of Professional Conduct. While attorneys before this Court are not governed by the Model Rules of Professional Conduct, they are governed by comparable rules: the Minnesota Rules of Professional Conduct and Rule 1.6, relating to confidentiality of information. See Local Rule 83.6(d) of the United States District Court for the District of Minnesota.

finds Braaten's conduct to be a violation of his ethical obligations and his obligations as an officer of this Court.

**IT IS HEREBY ORDERED that:**

1. Flagship's counsel's Motions to Withdraw [Docket Nos. 57 and 58] and P. Kittler's opposition, including accompanying memorandum, affidavits, and submissions and the transcript of the hearing on the motions to withdraw shall remain under seal, except as set forth in Paragraph 3 of this Order.

2. LMA's Motion to Obtain Ex Parte Submissions and Attend Hearing of Withdrawal of Counsel [Docket No. 63] is denied as to counsels' motions to withdraw and accompanying affidavits and memoranda of law filed by P. Kittler's counsel.

3. LMA's Motion to Obtain Ex Parte Submissions and Attend Hearing of Withdrawal of Counsel [Docket No. 63] is denied as to P. Kittler's submissions in opposition to his counsel's motions to withdraw, except for the documents listed in subparagraphs (a) - (e) below. In this regard, Flagship's counsel will provide a copy of each of these documents to LMA within 10 days of the date of this Order or provide to LMA the bates numbers of these documents, if they have been previously produced by any party or third party:

a. Attachment I, pleadings filed in the Utica case;

b. Attachment I, merchant agreement/charge back policy;

c. Attachment J, auto lease;

d. Attachment K, auto lease; and

e. J. Patrick Kittler's Affidavit, redacted as follows: J. Patrick Kittler's Affidavit shall be redacted beginning with the third sentence of the last paragraph on the last page to the end of that paragraph.

4. With respect to J. Patrick Kittler's Affidavit, in the event that a deposition of J. Patrick Kittler is taken, he may not be questioned regarding what he was told by P. Kittler or what was given by P. Kittler to prepare his Affidavit, or why certain facts or information were included or not included in the Affidavit.

5. LMA's Motion to Obtain Ex Parte Submissions and Attend Hearing of Withdrawal of Counsel [Docket No. 63] is denied as to its request to obtain a copy of the transcript of the hearing on the motions to withdraw.

6. The Court finds Mr. Braaten's conduct relating to the email messages accidentally sent by P. Kittler to Braaten on March 27, 2003 to be a violation of the Minnesota Rules of Professional Conduct and the obligations of an attorney appearing before this Court. The Court reserves the right to issue sanctions against Mr. Braaten in the future, if further similar conduct occurs.

Dated: June 9, 2003

Janie S. Mayeron

JANIE S. MAYERON
United States Magistrate Judge