UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Flagship Living Trust, for the benefit of Patrick S. Kittler, an individual,

Plaintiffs,

vs.

LMA Underwriting Agency, Inc., a Minnesota corporation; Frontline Processing Corporation, a Nevada corporation; Christopher Kittler, a resident of the State of Montana; and Ronald Reavis, a resident of the State of Montana,

Defendants.

Civil Case No. 01-656 MJD/JSM

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE MAYERON'S REPORT AND RECOMMENDATION ISSUED AUGUST 19, 2004**

RECEIVED
04 AUG 30 PM 12: 00
CLERK, U.S. DIST. COURT
MINNEAPOLIS, MN

## INTRODUCTION

In December of 2003, Defendants submitted a Motion for Summary Judgment requesting dismissal of all 16 of Plaintiffs' claims against Defendants. Plaintiffs responded and oral arguments were heard on March 17, 2004. On August 19, 2004, United States Magistrate Judge Mayeron issued her Report and Recommendation denying Defendants' request for summary judgment on 15 of the 16 counts. Defendants request that this Court review the summary judgment submissions in connection with their objections to the Report and Recommendation. Defendants believe that the Report and Recommendation has misapplied the case law, ignores the undisputed material facts and creates arguments and fact questions that Plaintiffs themselves have not raised.

SCANNED
SEP 0 5 2004
U.S. DISTRICT COURT MPLS

Defendants also request that they be granted oral arguments, at a time to be determined, to address their objections to the Report and Recommendation.

## OBJECTIONS

### 1. The Report Finds A Material Fact Regarding The Existence Of The Alleged Written Agreement, Where No Significantly Probative Evidence Exists To Permit Such A Finding.

This objection arises out of the Court's application of plaintiff's evidence (some of which is unsupported by the record) to find a fact issue where none exists. The issue before the Court is whether the Written Agreement submitted to this Court by the plaintiff was fabricated. According to the alleged Written Agreement submitted by the plaintiff, Patrick Kittler, plaintiff gave up 20% of his 50% ownership of LMA based on promises that plaintiff claims defendant has breached. The issue before the Court is whether plaintiff has presented more than a scintilla of evidence to prove the authenticity of this alleged Written Agreement. The evidence plaintiff presented, and that the Court relied on to deny summary judgment, simply raises a fact issue as to whether the plaintiff owned 30% of LMA—a fact that defendants **did not dispute** for purposes of summary judgment. In his response to summary judgment, plaintiff intentionally ignores that the 30% ownership is not disputed because plaintiff did not have evidence to support the real issue before the Court.

It is well known and often stated that "summary judgment may be granted against a nonmoving party shows evidence is "merely colorable" or "is not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The Supreme Court has also stated that "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. And the nonmoving party must "**do more than simply show that there is some**

**metaphysical doubt as to the material facts**." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (emphasis added).

Here, "merely colorable" and "scintilla" are adjectives that describe the evidence presented by the plaintiff to support his assertion of the authenticity of the written agreement in the face of defendants' highly probative and substantial evidence to the contrary. Presented with plaintiff's evidence, a jury could not reasonably find for the plaintiff. This case fits squarely within the description of the appropriate use of summary judgment. Nevertheless, the Report and Recommendation relies on the nonmoving party's merely colorable evidence that raises only a metaphysical doubt to deny summary judgment.

In light of the space limitations to make this argument, defendants will refer to the evidence outlined in their memorandum that the 1995 Agreement was fraudulent. (See Defs'. Mem. At 7-10, 13-14; Rep. And Rec. at 10-11 ) Significantly, in response to summary judgment, plaintiff's attorney did not even attempt to argue that the 1995 written agreement is valid other that the following statement:

> Patrick says that in 1995 he and his brother entered into to the agreement. . . .Christopher denies that there was such agreement and an expert has concluded that it is likely that Christopher's signature on the document is not genuine. Patrick denies he forged his brother's signature.

(Plfs.' Mem. At 3.)

This is the extent of plaintiff's evidence regarding the authenticity of the 1995 Written Agreement. Plaintiff presents other arguments as to why he should not be sanctioned for the fabrication and then argues that there is a question of fact as to whether the brothers entered into a contract in 1995 even if it was not the written agreement presented to the Court. (See Plfs'. Mem. At 12.) To support this argument, plaintiff sets forth evidence that plaintiff owned 30% of LMA-- a fact that is not disputed for purposes of summary judgment. (See Defs. Mem. At 2) To

establish his claim regarding the authenticity of the 1995 Written Agreement, plaintiff would have to provide evidence that at one time he owned 50% percent of LMA, because the alleged contract says he gave up 20% based on certain promises that he now claims were breached.

The Court, however, does not acknowledge plaintiff's counsel's clear avoidance of the issue of the validity of the 1995 Written Agreement. Instead, the Court includes as evidence of the validity of the Written Agreement evidence that merely shows plaintiff's 30% ownership in LMA, such as: (1) the fact that plaintiff was receiving distributions; and (2) the hearsay assertion by J.P. Kittler that the brothers had told him they reached an agreement in which Patrick would own **30%** of the company and that stock certificates had been issued to Patrick; and (3) that a stock certificate had been issued showing Patrick owned **30%** of the company. (Rep. And Rec. at 20-21.)

The fact that plaintiff can show he owned 30% of LMA does not mean that he has put forth evidence that would allow a reasonable jury to conclude that the Written 1995 Agreement was authentic. Plaintiff has to provide evidence to support his version of how he came to own the undisputed 30% of LMA. For example, plaintiff should have to produce evidence that he owned **50%** of LMA at one time, in order to produce a genuine issue of material fact as to the authenticity of the 1995 Written Agreement in which he claims he gave up 20% of the company.

The Court also relies on plaintiff's assertion that "payments were made to Patrick's mother" presumably in accordance with the terms of the alleged agreement. (See Rep. And Rec. at 21.) Notably, neither plaintiff nor the Court cite to any portion of the record that supports this assertion. On page 8 of the Report and Recommendation, the Court includes this assertion in its recitation of the evidence plaintiff points to as support for the validity of the Agreement. However, **none of the cites to the record that plaintiff provides in support of this assertion**

**make any mention of payments to Patrick and Christopher's mother**. (See Rep. And Rec. at p. 8 citing Defs' Exhs., Braaten Aff. Exhs. F, Q (Christopher Depo.), p. 77-78; Stewart Aff. Exh. C (Deposition of Ronald Reavis ("Reavis Depo."), Exh. 27), p. 88.) Plaintiff also makes this statement on page 12 in his Response to Summary Judgment and that time he cites "P. Kittler Decl; J.P Kittler Decl." (See Plf.'s Mem. At 12.) Again, neither declaration mentions payments by Christopher to his mother. [1] Clearly this unsupported assertion cannot be considered as part of the evidence that helps plaintiff meet their burden for surviving summary judgment.

When the unsupported assertion and the evidence that only establishes the undisputed fact that Patrick owned 30% of LMA are removed from the evidence upon which the Court relied, plaintiff's evidence that the 1995 Written Agreement is authentic boils down to: (1) J. Patrick Kittler's assertion that he gifted 50% of LMA to Patrick in 1991 (see Rep. And Rec. at 20)—which directly contradicts J.P. Kittler's claim for an accounting of his 50% of LMA in 1999. (see Braaten March 12, 2001 Aff. Ex. 1.) There is no other evidence that Patrick Kittler owned 50% of LMA; and (2) the fact that an ISO business was developed. (See Rep. And Rec. at 20.) Christopher's development of an ISO as evidence that the brothers entered into a written agreement in 1995, simply because the alleged agreement mentions the *hop*e of developing an ISO is an example of merely colorable evidence.

Plaintiff's attempt to divert the Court's attention from the lack of evidence of the validity of the 1995 Written Agreement by presenting evidence instead of an undisputed fact, was successful. Defendants respectfully request that the Court review the evidence that applies to the

---

[1] It should be pointed out that this makes at least **four** times where plaintiff's cites to the record do not support the allegations for which they are cited. In footnote 5 of the Report and Recommendation the Court notes (without reprimand) that while plaintiffs **quote** Ron Reavis as testifying that "[s]ometines Chris said Patrick owned part [of Frontline], sometimes he said screw him, doesn't own a thing," the citation provided by plaintiffs did not include the language or even the topic that was quoted. Then, on page 26 fn. 15, of the Report and Recommendation, the Court again notes (without comment) that testimony plaintiff cites to support his usurpation claim was not found at the citation provided by plaintiffs.

actual issue and without the consideration as evidence of the unsupported assertion, to determine that no fact issue exists regarding the validity of plaintiff's alleged written agreement.

2. **The Report Disregards the Significance of Plaintiff's Counsel's Refusal To Sign The Brief.**

Plaintiff's "misciting" of the record to create evidence to support his assertions, as discussed above, casts even greater doubt on the veracity of plaintiffs' other assertions in light of local counsel's refusal to sign the pleadings. In footnote 1 on page 1 of the Report and Recommendation, the court acknowledges that plaintiff's local counsel intentionally refused to sign plaintiff's responsive brief to summary judgment. Presumably, counsel's refusal was based on their view of the truth of assertions made in the brief. The Court states that it "does not take this conduct of local counsel lightly" and "reminds local counsel that while they are still representing plaintiff, they are required to fulfill their duty of representation competently and fully." It appears that the only issue the Court had with the refusal was that plaintiff may not be fully represented. The Court did not take issue, and thus *does* appear to take lightly, the significance of local counsel's refusal to sign pleadings presented to this court on ethical ground and the effect this has on defendants. Based on this refusal, as well as the substantial evidence of fraud on the court, defendants request that the Court review the evidence of fraud by plaintiff.

3. **The Report Misstates Defendants' Argument Regarding The Direct and Derivative Claims, and Indicates A Misunderstanding of this Law.**

In footnote 14 on page 23 of the Report and Recommendation, the Court states that "Defendants argued that, since summary judgment should be granted on the breach of contract claim, all of Patrick's direct claims must fail because there is no valid contract conferring ownership in LMA to Patrick and consequently, Patrick has no basis to assert such claims." This

footnote misstates defendant's argument and disregards Minnesota law regarding shareholder lawsuits.

Defendant's argument as to the direct claims is that if summary judgment is granted on the contract claim—that is, if the court finds there was no contract--then Patrick does not have an injury (i.e. breach of contract) separate and distinct from his injuries as a shareholder in LMA. In other words, Patrick's alleged injuries would be the same as the injuries alleged to the corporation and thus would belong to the corporation. Defendants do **not** argue that Patrick would lack basis because he was not a shareholder.[2] Defendants simply argue that he would have to bring the actions as a shareholder on behalf of the corporation pursuant to Minnesota law.

In Minnesota, an individual shareholder may only bring a direct action "when the shareholder alleges a direct injury to the shareholder that is separate and district from the injury to the corporation." Skoglund v. Brady, 541 N.W.2d 17, 21 (Minn. Ct. App. 1995). A breach of a contract between the shareholder and an officer of the company would be an example of a direct claim. The other claims brought by plaintiff, however, would be derivative claims brought as a shareholder of LMA, on behalf of LMA. Defendants have laid out the law on direct and derivative claims at pages 16-17 of their memorandum and plaintiff does not cite contrary law. In fact, plaintiff does not dispute that the direct claims should be dismissed if the breach of contract claim fails. Instead plaintiff erroneously asserts that the direct claims survive because the parties agree there was a contract. (Plf's. Mem. At 13.)

If the contract is found to be fraudulent, either on summary judgment or at trial, then there would be no separate and distinct injury to Patrick and, under Minnesota law, the direct

claims would have to be dismissed regardless of whether plaintiff is found to be a shareholder. Accordingly, defendants respectfully request that the Court review this law and defendants' argument so that the decision may accurately reflect both.

4. **The Report Errors In Finding A Material Fact With Respect To The Usurpation Claim.**

The Court concludes that there is a material fact as to the first element of the usurpation claim—whether LMA had an opportunity to develop an ISO business. See Miller v. Miller, 222 N.W.2d 71, 78 (Minn. 1974). It is undisputed, however, that LMA the insurer could not have become an ISO because for regulatory reasons. As the Court states, the evidence by the defendants suggests that "LMA could not have housed an ISO operation under its own roof…" The Court, however, finds that there is a question of fact regarding whether LMA could have taken advantage of the opportunity to expand into an ISO by ceasing its operations as an insurer, or creating an independent company. (Rep. And Rec. at 27.) Neither the Court nor plaintiff cites any authority that would support the assertion that a corporate opportunity includes an opportunity that would require abandoning the business purpose of the corporation. Moreover, Christopher had no obligation to build an independent ISO for LMA to acquire if LMA could not expand into this area of business within its corporate structure. If the ability to be owned by LMA were the criteria to show a corporate opportunity, any business that Christopher had built or purchased while he was an officer of LMA would be a corporate opportunity. Because it is undisputed that LMA could not become an ISO as LMA existed, the first element of the usurpation claim cannot be met and the claim should be dismissed on summary judgment.

---

[2] The Court's misstatement of defendants' argument here is another example of how the Court has mistakenly focused on Patrick's 30% ownership in LMA when this was not an issue at summary judgment. Defendants have assumed, for purposes of summary judgment, that plaintiff could raise a fact issue as to his ownership of LMA.

Even assuming that all of the elements of usurpation were met, the Court does not address the fact that Patrick undisputedly ratified Christopher's creation of Frontline to the detriment of LMA. (See Argument in Defs.' Mem. At 20-21). Patrick admits that he knew about Frontline's creation and did not immediately object because he believed that he owned an interest in Frontline as well. (See Plfs.' Mem. At 15.) *Why* Patrick ratified Christopher's formation of Frontline is irrelevant. The undisputed fact is that he did ratify the formation. (See Defs.' Mem. At 21.) Patrick was not concerned that Christopher was allegedly usurping an opportunity of LMA by forming Frontline as long as he thought he would benefit from the usurpation. He cannot now claim a breach of fiduciary duty on behalf of LMA, simply because he personally did not benefit from what he ratified while he was a shareholder of LMA. Accordingly the usurpation claim must be dismissed as a matter of law. See Miller, 222 N.2d at 75 fn.2, and 82 (finding that shareholders had ratified the diversion of business from shareholders' corporation to corporation set up by defendants). Plaintiff's have not cited any case law that says that a potential corporate usurpation is not ratified if the plaintiff/shareholder did not object because he believed he was going to benefit from the usurpation. (See Plfs.' Mem. At 15.)

5. **Count Seven Should Be Dismissed Because Plaintiffs Failed to Address It In Their Responsive Brief.**

Count Seven is a derivative claim alleging that Christopher breached a duty of loyalty to LMA. It appears from the Complaint that the actions plaintiffs claim were a breach of duty of loyalty, are the same actions alleged in plaintiffs' claims for misappropriation in Count Ten.

The Court states that to the extent that Count Seven is based on the contention that Christopher took information governed by MUTSA, the Court agrees that the claim is preempted by Count Ten. (Rep. And Rec. at fn. 16, p. 29.) The Court goes on to state that "to the extent

that Count Seven seeks to address other proprietary products and information allegedly taken by Christopher, Count Seven is not preempted by Count Ten." (Id.) As the Court acknowledges, plaintiffs do not address defendants' argument in their responsive brief. (Id.) Accordingly, because plaintiffs have not put forth evidence of the alleged breach of duty of loyalty claimed in Count Seven so that defendants or the Court even know what the allegations are, Count Seven should be dismissed as a matter of law.

## CONCLUSION

Defendants respectively request that this Court review the Report and Recommendation of the Magistrate Judge based on the objections outlined above.

NICKLAUS, BRAATEN & HOLLENHORST, PLLC

Date: August 30, 2004

ERIC J. BRAATEN #248502
GENA A. BRAATEN #266838
Historic Chaska Mill
500 Pine Street North, Suite 200
Chaska, MN 55318
(952) 448-4747

ATTORNEYS FOR DEFENDANTS
FRONTLINE PROCESSING CORPORATION AND
CHRISTOPHER KITTLER

NBH Nicklaus Braaten & Hollenhorst
*A professional limited liability company*

The Historic Chaska Mill, Suite 200, 500 Pine Street North, Chaska, MN 55318
Telephone: 952-448-4747 Facsimile: 952-448-4787

*Attorneys At Law*

Robert A. Nicklaus
Eric J. Braaten
Charles W. Hollenhorst
Gena A. Braaten

AUG 3 2004

August 30, 2004

Federal Court Administrator
United States District Court
U. S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**HAND DELIVERY**

Peter Gray, Esq.
Rider Bennett Egan & Arundel
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402

**HAND DELIVERY**

**Re: Flagship Living Trust v. LMA Underwriting Agency, Inc., et al.**
**Case No. 01-656 MJD/JSM**

Dear Court Administrator and Mr. Gray:

Enclosed for filing/service please find *Defendants' Objections to Magistrate Judge Mayeron's Report and Recommendation Issued August 19, 2004, Affidavit of Service* and a copy of the report pursuant to Local Rule 72.1(c)(2).

By separate letter Defendants' have requested a copy of summary judgment argument transcript from Neil K. Johnson & Associates, Court Reporters.

If you have any questions, please do not hesitate to contact our office.

RECEIVED
04 AUG 30 PM 12:01
CLERK U.S. DIST. COURT
MINNEAPOLIS, MN

Yours very truly,

**Nicklaus, Braaten & Hollenhorst, P.L.L.C.**

Eric J. Braaten
EJB:dm

Enclosures